UNITED STATES, Appellee

v.

Kody T. WEEKS, Senior Airman
U.S. Air Force, Appellant

No. 11-0526

Crim. App. No. 37535

United States Court of Appeals for the Armed Forces

Argued January 10, 2012

Decided March 12, 2012

STUCKY, J., delivered the opinion of the Court, in which BAKER, C.J., ERDMANN and RYAN, JJ., and COX, S.J., joined.


<u>Counsel</u>


For Appellant:  Major Daniel E. Schoeni (argued); Colonel Eric N. Eklund, Major Phillip T. Korman, and Major Grover H. Baxley.


For Appellee:  Major Scott C. Jansen (argued); Colonel Don M. Christensen, Lieutenant Colonel Linell A. Letendre, and Gerald R. Bruce, Esq. (on brief).


Military Judge:  Stephen R. Woody


**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

Judge STUCKY delivered the opinion of the Court.

We granted review to determine whether Appellant's guilty plea to a forgery charge was improvident.  We hold that there is a substantial legal question as to Appellant's plea because conduct he admitted did not constitute forgery as a matter of law:  "Telling a lie does not become forgery because it is reduced to writing."  In re Windsor, [1865] 122 Eng. Rep. 1288, 1291 (Blackburn, J., concurring).

I.

A.

In accordance with his pleas, Appellant was convicted by a military judge alone in a general court-martial of:  one specification of disobeying a noncommissioned officer, one specification of violating a no-contact order, one specification of larceny, and one specification of forgery, in violation of Articles 91, 92, 121, and 123, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 891, 892, 921, 923 (2006).  He was sentenced to a bad-conduct discharge, confinement for fourteen months, and reduction to E-1.  The convening authority approved the sentence as adjudged and the United States Air Force Court of Criminal Appeals (CCA) affirmed.  United States v. Weeks, No. ACM 37535, 2011 CCA LEXIS 351, at *4, 2011 WL 6010895, at *2 (A.F. Ct. Crim. App. Mar. 30, 2011) (unpublished).

2

B.

Sometime before September 2006, Appellant's cousin and his cousin's wife (the Barbers) gave him a check as a gift. Using the account information on those checks, Appellant stole approximately $50,000 from the Barbers' account by generating thirty-one checks to pay off his debts at the electronics retailer, Best Buy. To generate most of the checks, Appellant called Best Buy's automated bill pay system and used his own name but the Barbers' account and routing numbers to create electronic checks that were credited to his balance.

At trial, the military judge explained the elements of forgery by uttering according to the Military Judges' Benchbook. Dep't of the Army, Pam. 27-9, Legal Services, Military Judges' Benchbook ch. 3, ¶ 3-48-2(d) (2002). Appellant told the military judge he understood the elements and definitions; a stipulation of fact was admitted into evidence. The stipulation explained how Appellant created the checks and, in it, Appellant specifically stated that he "falsely" made them. His answers at the plea inquiry were substantially similar to the stipulation of fact. The military judge accepted the pleas, finding they were knowing and voluntary.

C.

The CCA held that Appellant's plea to forgery was provident because he "caused the checks to be falsely made" and because he

specifically admitted to falsely making and uttering the checks. 2011 CCA LEXIS 351, at *4, 2011 WL 6010895, at *2.

Appellant argues that his guilty plea was improvident because his conduct did not meet the elements of forgery as defined in Article 123, UCMJ. Specifically, he argues that he did not make or alter a signature or writing as required by Article 123, UCMJ, because he took the money by electronic and telephonic means. He also argues that even if he made or altered a signature or writing he did not falsely do so.

The Government argues that Appellant's plea was provident because Article 123's writing requirement is broad enough to cover his conduct. Citing this Court's precedent, it also argues that Appellant falsely made the checks within the meaning of Article 123, UCMJ. See United States v. Banfield, 37 M.J. 325, 326 (C.M.A. 1993) (finding the accused's guilty plea to forgery provident where he signed a fictitious name to thirty-nine checks and his own name to one).

## II.

This Court reviews a military judge's decision to accept a plea of guilty for abuse of discretion. United States v. Inabinette, 66 M.J. 320, 321 (C.A.A.F. 2008). It is an abuse of discretion for a military judge to accept a guilty plea without an adequate factual basis to support it. Id. at 321–22. It is also an abuse of discretion if the ruling is based on an

4

erroneous view of the law.  Id. at 322.  This Court reviews questions of law, such as whether Appellant "falsely" made a check or whether something constitutes a "signature or writing," de novo.  Id. at 321; see also United States v. Goodman, 70 M.J. 396, 400 (C.A.A.F. 2011).

If an accused's admissions in the plea inquiry do not establish each of the elements of the charged offense, the guilty plea must be set aside.  United States v. Gosselin, 62 M.J. 349, 352–53 (C.A.A.F. 2006) ("These conclusory responses to the military judge's questions . . . are not sufficient for us to find Gosselin's plea provident.  Conclusions of law alone do not satisfy the requirements of Article 45, UCMJ, and Rule for Courts-Martial 910(e)." (citations omitted)).

### III.

There are two separate and distinct forgery offenses under Article 123, UCMJ:  (1) forgery by "making or altering," and (2) forgery by "uttering."  United States v. Albrecht, 43 M.J. 65, 68 (C.A.A.F. 1995) ("[Article 123, UCMJ] does not set out alternative ways to commit forgery, in the sense of having to choose; rather, it specifies two conceptually distinct and different ways to commit forgery so that, in a given factual context one or the other or both might be violated.").  Appellant was charged with forgery by uttering, which has the following elements:

5

(a) That a certain signature or writing was falsely made or altered;

(b) That the signature or writing was of a nature which would, if genuine, apparently impose a legal liability on another or change another's legal rights or liabilities to that person's prejudice;

(c) That the accused uttered, offered, issued, or transferred the signature or writing;

(d) That at such time the accused knew that the signature or writing had been falsely made or altered; and

(e) That the uttering, offering, issuing or transferring was with the intent to defraud.

See United States v. Pauling, 60 M.J. 91, 93 (C.A.A.F. 2004) (citing the elements of forgery in the Manual for Courts-Martial, United States (MCM) pt. IV, ¶ 48.b.(2) (2002 ed.)). The first element -- whether a signature or writing was falsely made -- is the element at issue in this case and is dispositive as to whether Appellant committed either forgery offense.

A.

Appellant argues that his conduct does not violate Article 123, UCMJ, because the statute requires that an actual "signature or writing" be falsely made. The President has not updated the Manual to include electronic transactions, and the United States Navy-Marine Corps Court of Criminal Appeals has held telephonic transactions cannot constitute forgery. See United States v. Nimmons, 59 M.J. 550, 552 (N-M. Ct. Crim. App. 2003) (finding a guilty plea improvident where the accused used

information from a fellow Marine's check to pay bills via telephone because neither a writing nor a signature was used in the telephone transaction).

Unlike the accused in Nimmons, Appellant's conduct, although electronic and telephonic in origin, generated tangible checks that were processed at the victim's bank -- a fact he conceded at oral argument.[1]  Therefore, we find Article 123's writing requirement was clearly met in this case because Appellant's conduct produced a writing.

B.

Although Appellant made a signature or writing, the crux of forgery is the false making of the writing.  We conclude that Appellant did not falsely make a writing -- he used his own name -- and therefore his guilty plea to the forgery charge was improvident.

Article 123, UCMJ, may seem ambiguous as Appellant's actions were clearly "false" in the colloquial sense.  However, falsity in the forgery context is a term of art that developed in the common law.  See Gilbert v. United States, 370 U.S. 650, 655–59 (1962) (discussing the relationship between the common

---

[1] As a general matter, we are skeptical that Appellant's narrow construction of Article 123's writing requirement is correct. Nothing in the Manual implies that electronic or telephonic transactions cannot constitute a signature or writing within the meaning of Article 123, UCMJ.  In fact, the Manual takes an

law and federal forgery statutes).  Likewise, to understand the
conception of falsity in Article 123, UCMJ, it is necessary to
examine the role and development of the common law in the
military justice system.

The military justice system incorporated the common law of
forgery in various ways.  Even before a general prohibition on
forgery was included in the Articles of War, the narrower
proscription of forgery involving certain claims against the
United States invoked proof as employed in cases of forgery at
common law.  William Winthrop, Military Law and Precedents 702
(2d ed., Government Printing Office 1920) (1895).  The general
prohibition came in with the 1920 revision of the Articles of
War.  Article of War 93 (Act of June 4, 1920, ch. 227, 41 Stat.
759, 805 (1920)).  To interpret the provision in the Articles of
War, the 1921 Manual referenced the District of Columbia Code,
which evolved from a number of sources -- including the common
law as it existed in 1776.  A Manual for Courts-Martial, United
States Army ch. XVII, sect. X, ¶ 443, at 436 (1921 ed.); History
of the D.C. Code 1-2 (1929), reprinted in D.C. Code at 1-2
(2001).  The UCMJ specifically incorporated the common law of
forgery when it was adopted in 1950.  Uniform Code of Military
Justice:  Hearings on H.R. 2498 Before a Subcommittee of the

---

expansive view of what may constitute a signature or writing.
See MCM pt. IV, ¶ 48.c.(3), (4).

House Committee on Armed Services, 81st Cong. 1233 (1949),

reprinted in Index and Legislative History, Uniform Code of

Military Justice (1950) (not separately paginated) (noting that

the "basic common-law elements have been incorporated"); see

also Charles L. Decker et al., Dep't of Defense, Legal and

Legislative Basis, Manual for Courts-Martial United States 279

(1951) ("In the case of forgery, the Committee adopted almost

verbatim the common law definition . . . .").

"The essential elements of the common law crime of forgery

are '(1) a false making of some instrument in writing; (2) a

fraudulent intent; [and] (3) an instrument apparently capable of

effecting a fraud.'" Vizcarra-Ayala v. Mukasey, 514 F.3d 870,

874 (9th Cir. 2008). In addition to the common law elements,

the crime of forgery by uttering requires that the accused

somehow uttered the false instrument. See A Manual for Courts-

Martial, United States Army ch. XVII, sect. X, ¶ 443, at 438

(1921 ed.) (referencing § 843 of the D.C. Code and the elements

of forgery by uttering). The Manual still references, and this

Court has adopted, these common law elements and definitions.

See MCM pt. IV, ¶ 48.c.(2); United States v. Guess, 48 M.J. 69,

72 (C.A.A.F. 1998) (adopting ¶ 48.c.(2) to interpret Article

123a, UCMJ, 10 U.S.C. § 923a).

Whether something is a "false instrument" at common law,

and therefore under the UCMJ, depends on whether the falsity

lies in the representation of the facts or in the genuineness of the execution. Gilbert, 370 U.S. at 658. "Where the 'falsity lies in the representation of facts, not in the genuineness of execution,' it is not forgery." Id.; see also Vizcarra-Ayala, 514 F.3d at 875; MCM pt. IV, ¶ 48.c.(2) ("'False' refers not to the contents of the writing or to the facts stated therein but to the making or altering of it."); David A. Schlueter et al., Military Crimes and Defenses § 6.8[4][a], at 678 (1st ed. 2007) ("false recitals of fact in a document do not make the document a forgery"). Therefore, "forgery is not committed by the genuine making of a false instrument even when made with the intent to defraud." MCM pt. IV, ¶ 48.c.(2).

The distinction between forgery and "the genuine making of a false instrument" largely depends on whether the accused impersonates another person. The classic example of forgery occurs when an accused, with the intent to defraud and without authority, signs someone else's name "to an instrument having apparent legal efficacy." MCM pt. IV, ¶ 48.c.(3). This signature is falsely made because it purports to be the act of someone other than the actual signer. Id. Generally, signing one's own name to an instrument -- even with the intent to defraud -- is not forgery.

This does not mean that this type of conduct escapes criminal punishment. Appellant's conduct is larceny -- an

offense of which he was convicted.  Additionally, his actions are similar to conduct charged and upheld by this Court pursuant to Article 123a, UCMJ.  Guess, 48 M.J. at 70.

A couple of analogies help to illustrate what is, and what is not, forgery.  It is not forgery if a person, with the intent to defraud, signs his own name "as the maker of a check drawn on a bank in which that person does not have money or credit."  MCM pt. IV, ¶ 48.c.(2).  It is not forgery because, although the check falsely represents the existence of the account, it does not misrepresent the actual maker of the check and is therefore not falsely made.  Id.  Similarly, if a person signs another's name to an instrument but indicates he has the authority to sign by adding the word "by" with his own name, it is not forgery, even if no such authority exists.  Id.; see also Manual for Courts-Martial, U.S. Army ¶ 180i (1949 ed.).

In this case, Appellant falsely represented that the account was his.  However, he did not commit forgery because he did not impersonate the Barbers, hold the checks out as written by the Barbers, or otherwise misrepresent the actual maker of the check -- himself.  The checks were genuine in the forgery context because they were what they purported to be, checks drawn by the actual maker.  MCM pt. IV ¶ 48.c.2.  In other words, Appellant used his own name and information in combination with the actual routing and account number for the

11

Barbers' existing checking account.  Thus, Appellant defrauded but did not forge because his conduct can be compared to circumstances where a person adds the word "by" with his own name to indicate he had authority to sign on behalf of the account holders.

IV.

Appellant's conduct was not forgery because he did not falsely make or alter a certain signature or writing.[2]  The military judge abused his discretion in accepting Appellant's guilty plea to the forgery charge because his acceptance of the plea was based on an erroneous view of the law.  Appellant's admissions and conduct could not establish each of the elements of forgery.  Therefore, his guilty plea to the forgery offense must be set aside.  Gosselin, 62 M.J. at 352–53.  The findings of guilty as to the forgery offense are set aside; Charge II and its specification are dismissed.  We affirm the judgment of the United States Air Force Court of Criminal Appeals as to the remaining charges and specifications.  The judgment of the Court of Criminal Appeals affirming the sentence is set aside. The record is returned to the Judge Advocate General of the Air

---

[2] To the extent Banfield suggests that signing one's own name to a genuinely made false instrument is forgery, it is incorrect. See Banfield, 37 M.J. at 328 n.1 ("Even if appellant had signed his own name to all the travelers checks, his actions might still be considered forgery.  The Circuits have taken different approaches to resolving this issue." (citations omitted)).

Force for remand to the Court of Criminal Appeals for

reassessment of the sentence.