# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, HERRING, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Captain JOHN G. BIRDSONG**
**United States Army, Appellant**

ARMY 20140887

Headquarters, 8th Army
Mark A. Bridges, Military Judge
Colonel Craig A. Meredith, Staff Judge Advocate

For Appellant: Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Jennifer K. Beerman, JA (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Lieutenant Colonel Daniel D. Derner, JA; Captain Vincent S. Scalfani, JA (on brief).

8 July 2016

----------------------------------
SUMMARY DISPOSITION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of violating a lawful general regulation and one specification of sexual assault, in violation of Articles 92 and 120, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 920 (2012) [hereinafter UCMJ]. The military judge sentenced appellant to a dismissal and thirty months confinement. Pursuant to a pretrial agreement, the convening authority approved only so much of the sentence as provided for a dismissal and twenty-four months confinement.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises one assignment of error, which merits discussion and relief.

## BACKGROUND

Appellant attended a New Year's Eve party at the Dragon Hill Lodge, a military-run hotel in Korea, where Captain (CPT) KG, First Lieutenant (1LT) JJ, and Sergeant (SGT) JD were also in attendance. Appellant was a company commander; 1LT JJ worked directly for appellant as his S-3.

Anticipating they were going to drink alcohol that evening, the three female soldiers, CPT KG, 1LT JJ, and SGT JD, arranged to spend the night at the hotel. To avoid military police during curfew, appellant invited himself to spend the night in the suite rented by the three soldiers–who, after an evening of drinking, acquiesced to his wishes. At approximately 0200, the four took leave of the party and went to the rented suite.

Captain KG and SGT JD withdrew to the two beds in the suite leaving appellant and 1LT JJ alone on the couch. Appellant began to massage 1LT JJ's shoulders, but 1LT JJ moved to a chair in the room thereby suspending appellant's massage. A short time later, appellant tried again to massage 1LT JJ's shoulders and again, 1LT JJ moved away. She then told appellant she was going to sleep on the couch and there was not room for two on the couch. Despite her proclamation, appellant got on the couch with 1LT JJ and laid next to her, which she countenanced. While on the couch, appellant rolled on top of 1LT JJ and began rubbing her arms and breasts. First Lieutenant JJ stated she was going to vomit– resulting in appellant getting off the couch and moving onto the floor to sleep. First Lieutenant JJ rolled away from appellant and fell asleep facing the backside of the couch.[*]

Appellant was charged, *inter alia*, with violating a lawful general regulation, specifically Army Reg. 600-20, Army Command Policy, paras. 4-14(b)(1) and 4-14(b)(5)(18 Mar. 2008) (Rapid Action Revision, 20 Sep. 2012) [hereinafter AR 600-20], by wrongfully engaging in a prohibited relationship with 1LT JJ.

Paragraphs 4-14(b)(1) and 4-14(b)(5) of AR 600-20 prohibit *relationships* between soldiers of different ranks if they:

> (1) Compromise, or appear to compromise, the integrity of supervisory authority or the chain of command; [or]

> (5) Create an actual or clearly predictable adverse

---

[*] The Article 120, UCMJ, offense relates to appellant's later sexual act with CPT KG.

> impact on discipline, authority, morale, or the
> ability of the command to accomplish its mission.

(emphasis added).

The stipulation of fact states appellant violated the foregoing provisions of the regulation by "making sexual advances towards a junior officer within his chain of responsibility." During the providence inquiry, appellant admitted he violated AR 600-20 by making sexual advances towards 1LT JJ, his subordinate.

## LAW AND DISCUSSION

This court reviews a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012). "The test for an abuse of discretion is whether the record shows a substantial basis in law or fact for questioning the plea." *United States v. Schell*, 72 M.J. 339, 345 (C.A.A.F. 2013). "It is an abuse of discretion for a military judge to accept a guilty plea without an adequate factual basis to support it." *Weeks*, 71 M.J. at 46.

In this case, appellant asserts his rebuffed sexual gestures towards 1LT JJ do not constitute a "relationship" as envisioned by AR 600-20, and the military judge abused his discretion by accepting appellant's guilty plea to violating this regulation because he failed to elicit a sufficient factual basis to establish a relationship. Appellant argues this court should now set aside and dismiss the finding of guilty to this specification.

The government counsel concedes that the facts elicited in this case do not support appellant engaged in a prohibited relationship. Government counsel, however, argue appellant's conduct and the providence inquiry support a conviction for the lesser-included offense of attempting to disobey AR 600-20, a violation of Article 80, UCMJ. We agree.

A solicitation to engage in a sexual act does not amount to a relationship as envisioned by AR 600-20 when a verbal advance is rejected. *See United States v. Oramas*, ARMY 20051168, 2007 CCA LEXIS 588, at *6-8 (Army Ct. Crim. App. 29 Mar. 2007) (mem. op.). This court has also found a single incident involving a rejected physical advance including touching and kissing also did not rise to the level of a "relationship" as defined by AR 600-20. *United States v. Morgan*, ARMY 20000928, 2004 CCA LEXIS 423, at *6-8 (Army Ct. Crim. App. 20 Feb. 2004) (mem. op.). It is firmly recognized that the "victim's conduct is relevant to whether or not a prohibited relationship was established." *Id*. at *7; *see also United States v. Humpherys*, 57 M.J. 83, 93-95 (C.A.A.F. 2002); *United States v. Moorer*, 15 M.J. 520, 522 (A.C.M.R.) (holding that a supply clerk attempted to violate a lawful general order prohibiting specifically enumerated personal

relationships when he asked trainee for a date), *rev'd in part on other grounds*, 16 M.J. 451 (C.M.A. 1983). Further, the "clumsy and ineffective courting techniques and flirtatious behavior, alone, do not constitute a 'relationship' as that term is ordinarily defined." *Oramas*, 2007 CCA LEXIS 588, at *8.

Because 1LT JJ declined appellant's advances, appellant was unable to actually form a relationship with 1LT JJ prohibited by AR 600-20. The providence inquiry, nonetheless, still establishes appellant's criminal intent and liability. Appellant's testimony during the colloquy made clear he intended to engage in a prohibited relationship with 1LT JJ that evening. But for her actions, appellant would have exploited his position and rank to take advantage of 1LT JJ–a junior soldier on his immediate staff. Appellant's actions went beyond mere preparation and included physical advances. It is clear from the record appellant fully intended to enter into a prohibited relationship as envisioned by AR 600-20.

Accordingly, we affirm the lesser-included offense of an attempt to violate a lawful general regulation under Article 80, UCMJ with respect to the Specification of Charge I. *See United States v. Redlinski*, 58 M.J. 117, 119 (C.A.A.F. 2003); UCMJ art. 59.

## CONCLUSION

The court affirms only so much of the finding of guilty of the Specification of Charge 1 as finds that appellant:

> did, at or near USAG-Yongsan, ROK, on or about 1 January 2014, attempt to violate a lawful general regulation, to wit: paragraph 4-14(b)(1) and 4-14(b)(5), Army Regulation 600-20, dated 18 March 2008, (Rapid Action Revision, dated 20 September 2012) by attempting to wrongfully engage in a prohibited relationship with [1LT JJ], which, if successful, would have compromised the integrity of the supervisory authority and created a clear predictable adverse impact on discipline and authority, in violation of Article 80, UCMJ.

The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). In evaluating the *Winckelmann*

factors, we first find no dramatic change in the penalty landscape that might cause us pause in reassessing appellant's sentence. *See Manual for Courts-Martial*, United States (2012 ed.), pt. IV, ¶ 4.e. Additionally, appellant was tried and sentenced by a military judge and the nature of the remaining offenses still captures the gravamen of the original offenses and the circumstances surrounding appellant's conduct. Finally, based on our experience, we are familiar with the remaining offenses, so we may reliably determine what sentence would have been imposed at trial by the military judge. Based on the entire record and appellant's course of conduct, we are confident the military judge would have imposed a sentence of at least that which was approved.

Reassessing the sentence based on the noted error and the remaining findings of guilty, we AFFIRM the sentence as approved. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by our decision, are ordered restored.

Judge HERRING and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

5